# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=============================

## ON MOTION FOR REHEARING

=============================

### NO. 03-03-00030-CR

**David Wayne Casey, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE CRIMINAL DISTRICT COURT OF DALLAS COUNTY**
**NO. F-0036978-SH, HONORABLE JANICE L. WARDER, JUDGE PRESIDING**

---

## O P I N I O N

The opinion and judgment dated December 2, 2004, are withdrawn. The State's motion for rehearing is overruled.

Appellant David Wayne Casey, Jr., and codefendant Scott Cannon were jointly tried for sexual assault aggravated by the administration of gamma hydroxybutyrate (GHB), a "date rape" drug. *See* Tex. Pen. Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(vi) (West Supp. 2004-05). The jury found Cannon not guilty and convicted appellant of the lesser included offense of sexual assault, for

which it assessed a twenty-year prison term. *See id*. § 22.011(a)(1)(A). We hold that the evidence is legally and factually sufficient to sustain the jury's verdict, but that the trial court erred by admitting certain photographs in evidence and by commenting on the weight of the evidence in its jury charge. We will reverse the conviction and remand for a new trial.

### *Background*

The complainant, K.T., was employed as a "shot girl" at a Dallas topless bar. She was at the bar on the night of April 24, 2000, but not working. Around 7:30 p.m., she called appellant, with whom she was acquainted, to ask what he was doing that night. About two hours later, appellant arrived at the club with his friend Cannon. K.T., appellant, and Cannon remained at the bar for an hour. All three were drinking, but K.T. testified that she was not intoxicated. Appellant told K.T. that he and Cannon were planning to go to appellant's house to watch videos, and he invited her to join them. She accepted the invitation, and she followed in her own car as they drove to appellant's house.

The three arrived at appellant's house at about 11:00 p.m. and were soon joined by appellant's housemate, Jessie Diaz, who arrived with a female companion identified only as Brandy. K.T., appellant, and Cannon were drinking beer, but someone suggested that they drink shots. Leaving K.T. alone in the living room, the others went to the kitchen to prepare the shots. K.T. testified that by this time, she was beginning to feel uncomfortable and planned to leave at the first opportunity. The group returned from the kitchen and Diaz handed her a shot of vodka. K.T. did not care for vodka, but she decided to drink the shot and then leave. Moments after drinking the

2

vodka, however, K.T. began to feel strange. When she tried to stand, her vision became blurred and she passed out.

K.T.'s memory of the next several hours was sketchy, as she drifted in and out of consciousness. She remembered vomiting and defecating on herself, and being moved from the living room to the hallway. She recalled people standing over her and hearing appellant and Cannon discuss what to do with her. At one point, she became aware that she was naked and that appellant was between her legs penetrating her with his penis. Cannon was walking back and forth, as if he had a camcorder. K.T. testified that she also remembered Cannon penetrating her while appellant watched. She recalled flashes that caused her to squint her eyes.

K.T. regained full consciousness at 4:30 a.m. She was naked and lying on the floor of appellant's bedroom. She went to the bathroom, which woke up appellant. He told her that she had thrown up on herself and that he had washed her clothes. Her shirt was still wet, so she borrowed a shirt from appellant. K.T. got dressed and left the house. She saw no one else there.

K.T. testified that she still felt sick and "foggy." She managed to drive to Chris Nunn's house. Nunn was K.T.'s on-again, off-again boyfriend. Nunn had introduced K.T. to appellant and Cannon, but had later advised her to avoid them. K.T. had been told by appellant that Nunn called while she was asleep and knew that she spent the night at appellant's house. K.T. told Nunn what had happened to her. Nunn called the police and then drove K.T. to Parkland Hospital. Semen recovered during K.T.'s physical examination contained appellant's DNA. No DNA link to Cannon was found. No trace of GHB was found in K.T.'s blood or urine, but a toxicologist testified that the drug has a half-life in the body of only twenty minutes to an hour.

3

A warrant to search appellant's house was executed on June 25, 2000, the day after the alleged assault. A soft drink bottle containing sixty-four grams of a liquid identified as GHB was found in the refrigerator's freezer compartment. A Polaroid camera and four Polaroid photographs of K.T. were found in the kitchen. One of these photographs shows K.T. lying naked in the hallway, and the others are closeups of K.T.'s vaginal area. Two 35 mm. cameras were found in Diaz's bedroom. One of these cameras contained exposed film that, when developed, showed: (1) photographs of an unidentified, naked woman; (2) photographs of Cannon vomiting; (3) a photograph of Diaz having sexual intercourse with an unidentified woman; (4) a photograph of appellant making a hand sign and another showing him urinating; and (5) photographs of Cannon lying on a bed with an unidentified naked woman and an unidentified man. No camcorder was found in the house.

Cannon testified in his own behalf. He said that K.T. had been "very friendly" with appellant at the bar, sitting next to him and resting her hand on his shoulder. When they arrived at appellant's residence, Cannon noticed that K.T. took a soda bottle with her into the house. K.T. sat next to appellant on the couch as they watched videos. According to Cannon, "They were touching, feeling, just kind of half kissing type thing." Diaz and his companion arrived, and Diaz later poured shots of vodka for everyone. K.T. drank her shot with no apparent ill effects, but she did appear to be "kind of buzzed" and she "became more aggressively touching and feeling." After about an hour, appellant and K.T. went to appellant's bedroom.

Cannon testified that he was too intoxicated to drive, so he decided to spend the night in appellant's spare bedroom. As he passed the half-opened door to appellant's bedroom, he saw

4

appellant and K.T. embracing. Cannon said he was awakened in the middle of the night by the sound of K.T. vomiting in the hall. Cannon wiped the vomit from K.T.'s face with a towel, then woke appellant, told him to take care of K.T., and went back to bed. Cannon testified that he did not take any photographs or videos of K.T., and that he did not see anyone else do so. He denied touching K.T. "in any sexual way."

### *Sufficiency of the Evidence*

When the sufficiency of the evidence to sustain a criminal conviction is challenged, we must determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981) (legal sufficiency); *Zuniga v. State*, 144 S.W.2d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency). In a legal sufficiency review, we look at all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin*, 614 S.W.2d at 159 (citing *Jackson*, 443 U.S. at 318-19). In a factual sufficiency review, we look at the evidence in a neutral light and consider the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, we may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to

5

support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85; *see Johnson*, 23 S.W.3d at 11.

Appellant argues that because the jury did not convict him of aggravated sexual assault, the jury necessarily found that he did not administer GHB to K.T. He then asserts without citation of authority that "if K.T. really was under the influence of GHB, she voluntarily ingested it, and the automatic statutory consent element is eliminated." But as the jury was correctly instructed by the trial court, a sexual assault is without consent if the other person has not consented and the actor knows the other person is unconscious or physically unable to resist. Tex. Pen. Code Ann. § 22.011(b)(3). Under section 22.011(b)(3), sexual intercourse is without consent when assent in fact is not given and the actor knows that the victim's impairment is such that resistance is not reasonably to be expected. *Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993). In *Elliott*, the evidence was held sufficient to prove lack of consent where the victim of the sexual assault was unconscious due to voluntary intoxication. *Id.*

Appellant also urges that K.T. had a motive to lie about her conduct on the night in question. He points to K.T.'s testimony that she and Nunn had been dating for some time, that marriage had been discussed, and that she still loved Nunn even though they had broken up. K.T. acknowledged during cross-examination that Nunn "wouldn't be happy" if he learned that she had sexual intercourse with appellant. Appellant suggests that K.T. falsely accused him of assaulting her in order to preserve her hopes of reuniting with Nunn. The jury, however, is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984);

6

*Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.). Due deference must be given to the jury's decision to credit K.T.'s testimony insofar as she denied consenting to sexual intercourse with appellant.

Viewing the evidence in the light most favorable to the verdict, we hold that the jury could rationally find beyond a reasonable doubt that appellant had sexual intercourse with K.T. without her consent in fact and when he knew that K.T. was unconscious or physically unable to resist. We further hold that the jury's verdict is not manifestly unjust even when all the evidence, including Cannon's defensive testimony, is considered in a neutral light. A decision is not manifestly unjust merely because the fact-finder resolved conflicting views of the evidence in the State's favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd). Point of error three is overruled.

### *Photographs*

In his first point of error, appellant contends that twenty-seven photographs were erroneously admitted in evidence. Appellant argues that no foundation was laid for the photographs, they were not properly authenticated, most of them had no relevance other than to prove character conformity, and the danger of unfair prejudice arising from the admission of the photographs substantially outweighed any probative value they might have had. *See* Tex. R. Evid. 403, 404(b), 901. The State's brief does not specifically address the admissibility of any of the photographs in question. Instead, the State broadly asserts that all the photographs were properly admitted to prove the manner, means, and circumstances of the alleged offense.

The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). As a general rule, a photograph is admissible if it is relevant to a material issue and is an accurate representation of its subject as of a given time. *DeLuna v. State*, 711 S.W.2d 44, 46 (Tex. Crim. App. 1986).

The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). A photograph may be authenticated by any witness who has personal knowledge that it accurately represents the scene or event it purports to portray. *Kephart v. State*, 875 S.W.2d 319, 321 (Tex. Crim. App. 1994); *Drone v. State*, 906 S.W.2d 608, 611 (Tex. App.—Austin 1995, pet. ref'd).

Evidence of other crimes, wrongs, or acts is not admissible to prove the defendant's character in order to show action in conformity to that character. Tex. R. Evid. 404(b). This rule incorporates the fundamental tenet of our criminal justice system that an accused may be tried only for the offense of which he is accused and not for his criminal propensities. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996). A defendant may not be tried for some collateral crime or for being a criminal generally. *Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983).

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).

8

Factors that should be considered in applying rule 403 are the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence. *Montgomery*, 810 S.W.2d at 389-90. In the context of the admission of photographs, courts also consider the number of photographs, their size and detail, whether they are in color or black-and-white, whether they are gruesome, and whether any bodies are clothed, naked, or altered by autopsy. *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992).

### State's exhibits 13, 14, and 15

During the search of appellant's house, police found four Polaroid photographs in the kitchen. One of these photographs, State's exhibit 16, shows K.T. lying unconscious on the floor in the hallway of the house. She is naked, and there is a towel next to her head. Appellant does not complain of the admission of this photograph, to which there was no trial objection. The other three Polaroid photographs are close-ups of a woman's genital area. K.T. identified the photographs as "[m]y clitoris and pretty much my vagina." Eight-by-eight enlargements of these three photographs were admitted as State's exhibits 13, 14, and 15.[1]

Appellant concedes that these photographs were identified by K.T. Nevertheless, he contends that a proper foundation was not laid for the exhibits because they were not connected to him. That is, there is no evidence that appellant took the photographs or knew that they were made.

---

[1] The appellate record contains black-and-white photocopies of all the photographic exhibits. It is otherwise clear from the record that the actual exhibits were in color.

Appellant also urges that any probative value these photographs may have had was outweighed by their unfairly prejudicial nature.[2]

K.T.'s testimony regarding her memory of a camcorder and flashes suggested that she was photographed on the night in question. It is reasonable to conclude that exhibits 13, 14, and 15 were taken at or about the time exhibit 16 was taken. Evidence that K.T. was photographed while she was naked and unconscious was essential to understanding the context and circumstances of the alleged assault. It was, in other words, same transaction contextual evidence. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *Mayes v. State*, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991). Although there is no evidence that appellant personally took the photographs in question, they were found in open view in his kitchen on the day after the offense and thus tended to confirm K.T.'s testimony. The trial court did not abuse its discretion by concluding that an adequate foundation for admission of the photographs was laid and that the photographs were relevant. Although the close-up photographs of K.T.'s genitals were tasteless and the introduction of all three photographs was repetitive, we cannot state under the circumstances that the trial court abused its discretion by concluding that the probative value of the photographs outweighed the danger of unfair prejudice.

### State's exhibits 71 through 76 and 78

The other photographs at issue were on a roll of film taken from a 35 mm. camera found in Diaz's bedroom. Exhibits 74, 75, and 76 show a young woman lying naked on a couch or

---

[2] Appellant does not challenge the admissibility of these three photographs under rule 404(b).

bed. She appears to be asleep or unconscious. Exhibit 71 is a close-up of the woman's genitals. In exhibit 72, a man is inserting a long object into the woman's vagina. In exhibit 73, the same man is pushing a drink can into the woman's vagina. In exhibit 78, a different man is performing cunnilingus on the woman. There is no evidence regarding the identities of the woman and men shown in these photographs. There also is no evidence as to where, when, or by whom these photographs were taken, although there is indirect evidence (discussed below) that the photographs were recent. Comments made during a hearing on the admissibility of the photographs suggest that they were taken in Diaz's bedroom.

At trial, the State argued that these photographs were admissible to "show the motivation, to keep a photograph of a woman who is naked and who they are sexually assaulting." The court admitted the photographs without specifying a ground. The court did state that the photographs show "what appears to be an unconscious girl being sexually abused in the Defendant's house," that they "appear to have been taken in Jessie Diaz' room who was there at the time of the offense that we were [sic] trying," and that they "are of a similar nature" to the Polaroid photographs of K.T. previously admitted in evidence. We infer that the court determined that these photographs were admissible to prove that appellant and his codefendant administered GHB to K.T. or, as the State argued, to prove their motive for having done so.

Evidence that appellant or Cannon had drugged and sexually assaulted another woman was not admissible under rule 404(b) *solely* to prove a propensity for such conduct. Moreover, there is no evidence that these photographs are what the State claimed them to be—photographs of a woman who had been drugged by appellant or Cannon, and then sexually

11

assaulted. *See* Tex. R. Evid. 901(a). Even if it is assumed that these photographs were not posed and the woman pictured is unconscious, there is no evidence that she had been given GHB or any other drug, nor is there any evidence that either appellant or Cannon were in any way responsible for her intoxication. And even if the photographs were taken in Diaz's bedroom in appellant's house, there is no evidence that either appellant or Cannon took the photographs or knew of their existence. Thus, the photographs were not probative evidence that either appellant or Cannon had drugged K.T. for the purpose of making sexually explicit photographs of her.

These photographs, particularly those showing the man inserting objects into the woman's vagina, are lewd, vulgar, and disgusting. Remarks by the court during the trial show that the photographs elicited a strong, negative, emotional reaction among the jurors. Because the photographs had no relevance beyond proving the bad character of the unidentified men in the photographs and of the unidentified person who took them, we must conclude that the probative value of the photographs was far exceeded by the danger of unfair prejudice and that the trial court abused its discretion by overruling appellant's rule 403 objection.

### State's exhibits 77 and 82 through 97

The remaining photographs found on the exposed roll of film were introduced as State's exhibits 77 and 82 through 97. Exhibit 77 was identified as a photograph of Diaz having sexual intercourse with an unidentified woman, probably in Diaz's bedroom. There is no evidence as to when or by whom the photograph was taken.

12

Exhibits 82 through 92 are photographs of Cannon taken in a parking lot or driveway, perhaps outside appellant's house. Diaz also appears in one of the photographs. Cannon is obviously ill, and in most of the photographs he is sitting, lying, or crawling on the ground. Some of the photographs show him vomiting. Cannon testified that he believed that these photographs were taken on the night of his birthday in October 1999, when he became very intoxicated and ill. The photographer was not identified.

Exhibits 95, 96, and 97 show Cannon lying in a bed. The record suggests that the location was probably Diaz's bedroom. Cannon is wearing only his underwear. Another man is also on the bed, and a woman is lying between the two men. The woman is naked and is deliberately exposing her vagina for the camera. Cannon testified that the woman was a dancer named Crystal; the other man he identified only as Adrian. Cannon believed that these photographs were also taken on the night of his birthday, while he was intoxicated. Once again, there is no evidence as to who took the photographs.

Exhibits 93 and 94 are photographs of appellant. In exhibit 93, he is shown standing in his kitchen making a hand gesture that was described as a gang sign. In exhibit 94, appellant is urinating on the side of a building, perhaps his house. There is no evidence as to when or by whom the photographs were taken.

These seventeen photographs were offered and admitted as a group. The State urged their admission on the ground that they connected appellant and Cannon to the photographs of the unconscious woman that had previously been introduced as exhibits 71 through 76 and 78, and to show when the latter photographs had been taken. The State reasoned that because the photographs of the unconscious woman were the last exposures on the roll, they must have been made recently

13

because in the proffered photographs appellant and Cannon appeared much the same as they did at trial. The court ruled that the photographs were admissible to show appellant's and Cannon's "knowledge of what is on the roll of film" and to show the relationship between appellant, Cannon, and Diaz.

The sequence of the photographs on the roll of film may show that the photographs of the unconscious woman were recent. But the mere fact that photographs of appellant and Cannon were on the same roll of film does not tend to prove that either appellant or Cannon was aware of the photographs of the unconscious woman or to connect either of them to the activities depicted in those photographs. The fact that Cannon and Diaz are both in one of the photographs does not tend to prove that appellant took that photograph, much less that he took any of the other photographs on the roll of film.

Aside from the one photograph of Cannon and Diaz together, these photographs are not probative of the relationship between appellant, Cannon, and Diaz. In any event, that relationship was not a contested issue at the trial. The evidence was undisputed that appellant and Cannon were friends, that Diaz was appellant's housemate, and that appellant, Cannon, and Diaz were at the house with K.T. on the night in question.

Proof of the events depicted in these seventeen photographs—Diaz having sexual intercourse, Cannon intoxicated and vomiting, Cannon in bed with an obviously consenting woman, appellant urinating against a wall and flashing a gang sign—did not have any tendency to make the existence of a fact of consequence in this cause more or less probable. *See* Tex. R. Evid. 401. The admission of these photographs improperly encouraged the jury to convict appellant on the basis of

14

his, his codefendant's, and his housemate's debauched character. The admission of the exhibits was an abuse of the trial court's discretion. *See* Tex. R. Evid. 403, 404(b).

### *Harm*

The State argues that any error in the admission of the challenged photographs was harmless. In fact, the State asserts that "the defense used these exhibits to its advantage" by "offering evidence that the photographs were merely indicative of the decadent lifestyle in which [K.T.] participated." This is a reference to testimony by a defense witness that the use of GHB is common among persons who work at topless bars, that such persons often "party" in the manner shown in the photographs, and that she had seen similar photographs of persons in the "industry." The State also notes that in their arguments to the jury, defense counsel sought to minimize the effect of the photographs by suggesting that the photographs showed the morals of all the principals in this case, including K.T. Defense counsel had no choice but to deal with these exhibits after they were admitted over their objections. We are not persuaded that efforts by the defense to suggest that K.T. took part in the "decadent lifestyle" depicted in the exhibits lessened the harm to appellant arising from their erroneous admission.

The State further argues that Cannon's acquittal and appellant's conviction for the lesser included offense demonstrate that the jury was not affected by the objectionable photographs. While it is impossible to state with certainty why the jury returned these verdicts, the likely reason for Cannon's acquittal was the absence of DNA or any other physical evidence linking him to the alleged offense. Whatever the jury may have thought of Cannon's character as suggested by the photographs, it was apparently not prepared to convict him solely on the basis of K.T.'s admittedly

15

vague memory. The jury's failure to find that appellant administered GHB to K.T. may possibly be explained by the absence of the drug in her blood or urine, or the jury may have believed that K.T.'s intoxication—whether by GHB or some other intoxicant—was voluntary. The prejudice to appellant arising from the inadmissible photographs went to the consent issue: by improperly suggesting that he was the sort of person who would take sexual advantage of an intoxicated woman, the photographs likely removed any doubt the jury might have had as to whether K.T. consented to sexual intercourse with appellant.

Given the number and nature of the photographs, the absence of any probative value beyond character conformity, and the very real danger of unfair prejudice under the circumstances shown by the record, we hold that the erroneous admission of State's exhibits 71 through 78 and 82 through 97 affected appellant's substantial rights. Tex. R. App. P. 44.2(b). Point of error one is sustained in part.

### *Jury Charge*

In point of error two, appellant contends the trial court erroneously commented on the weight of the evidence in its jury charge. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2004-05). The complained-of error occurred in the application paragraph for aggravated sexual assault, in which the court instructed the jury:

> Now if you find from the evidence beyond a reasonable doubt that . . . [appellant], acting alone or as a party, did . . . knowingly or intentionally cause penetration of the female sexual organ of [K.T.], without the consent of [K.T.], by . . . the sexual organ of [appellant], and [appellant], acting alone or as a party, did administer or provide a drug, namely: [GHB] to [K.T.], *the victim of the offense*,

16

with the intent of facilitating the commission of the offense, then you will find the defendant guilty of aggravated sexual assault, as charged in the indictment.

(Emphasis added). Appellant's objection to the emphasized phrase was overruled. The charge went on to instruct the jury that if it found appellant not guilty of aggravated sexual assault, it was to consider whether he was guilty of sexual assault. The charge contained a second application paragraph for the lesser offense.

A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986). There were two seriously controverted issues in this cause: did K.T. consent to sexual intercourse with appellant and did appellant administer GHB to K.T. Appellant contends that the application paragraph, by referring to K.T. as the victim, erroneously assumed that K.T. did not consent to the intercourse. *Talkington v. State*, 682 S.W.2d 674, 675 (Tex. App.—Eastland 1984, pet. ref'd).

The State argues that *Talkington* is distinguishable because the only contested issue in that case was consent. Here, the jury had to decide both the consent issue and the drug issue. The State argues that the application paragraph was structured in such a way as to require the jury to find a lack of consent to sexual intercourse before it determined whether the drug had been administered, and points out that the reference to K.T. as the victim occurred in that portion of the application paragraph dealing with the latter issue. The State reasons that before reaching that point in the application paragraph, the jury would have already found that K.T. was the victim of a sexual assault, and therefore the reference to her as a victim was not error.

In determining whether an instruction is a comment on the weight of the evidence, we must consider the court's charge as a whole. *Russell v. State*, 749 S.W.2d 77, 79 (Tex. Crim. App. 1988). The State's argument ignores the fact that the charge contained two separate application paragraphs. The first, at issue here, only asked the jury to decide whether appellant was guilty of aggravated sexual assault. The second, to be reached if the jury found appellant not guilty of the greater offense, asked the jury to decide whether appellant was guilty of sexual assault. By the time the jury reached this second application paragraph, which it clearly did because it found appellant guilty of the lesser included offense, it had been effectively instructed by the court that K.T. was the victim of a sexual assault.

The State also argues that referring to K.T. in the charge as the "victim of the offense" was required by the express terms of the aggravated sexual assault statute, which provides that a sexual assault is aggravated if the actor administers GHB or other drugs "to the victim of the offense with the intent of facilitating the commission of the offense." Tex. Pen. Code Ann. § 22.021(a)(2)(A)(vi). But the word "victim" is used throughout subsection 22.021(a)(2)(A) simply to refer to the person sexually assaulted. We do not understand the statute to require an express jury finding that the person assaulted was a "victim," but only to require that the person drugged be the person sexually assaulted. If the application paragraph had required the jury to find that appellant administered GHB to K.T. with the requisite intent, without referring to K.T. as "the victim of the offense," it would have conformed to the statute without commenting on the weight of the evidence.

We hold that the trial court's charge commented on the weight of the evidence and that appellant's objection was erroneously overruled. The charge error was clearly calculated to

18

injure appellant's rights and was therefore harmful.  *See* Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).  Point of error two is sustained.

### *Conclusion*

Because of our disposition of points of error one, two, and three, we do not reach appellant's remaining points of error.  The judgment of conviction is reversed and the cause is remanded to the district court for a new trial.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed:   March 10, 2005

Publish