# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON REMAND

========================


## NO. 03-03-00030-CR


**David Wayne Casey, Jr., Appellant**

**v.**

**The State of Texas, Appellee**


### FROM THE CRIMINAL DISTRICT COURT OF DALLAS COUNTY
### NO. F-0036978-SH, HONORABLE JANICE L. WARDER, JUDGE PRESIDING


### M E M O R A N D U M   O P I N I O N


Appellant David Wayne Casey, Jr., was tried for sexual assault aggravated by the administration of gamma hydroxybutyrate (GHB). *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i), (2)(A)(vi) (West Supp. 2006). The jury convicted him of the lesser included offense of sexual assault, for which it assessed a twenty-year prison term. *See id*. § 22.011(a)(1)(A). On original submission, this Court found that the evidence was legally and factually sufficient to sustain the jury's verdict, but we reversed the judgment of conviction after concluding that the trial court erred by admitting certain photographs in evidence and commenting on the weight of the evidence in the jury charge. *Casey v. State*, 160 S.W.3d 218, 230 (Tex. App.—Austin 2005) (*Casey I*). The court

of criminal appeals granted the State's petition for discretionary review, reversed our judgment, and remanded the cause to us for consideration of appellant's remaining points of error. *Casey v. State*, 215 S.W.3d 870, 887 (Tex. Crim. App. 2007) (*Casey II*).

In the points of error not previously discussed, appellant contends that the trial court abused its discretion by excluding evidence offered to impeach the complaining witness, by excluding evidence and limiting defense questioning pertinent to his defensive theory, and by refusing to permit his mother to testify at the punishment stage because she heard closing arguments at the guilt stage. He also contends that his trial counsel rendered ineffective assistance. We will overrule these contentions and affirm the conviction.

### Background

The complainant, K.T., was employed as a "shot girl" at a Dallas topless club. She was acquainted with appellant, having been introduced to him by her boyfriend. On the night of April 24, 2000, K.T. was not working, but she went to the club where she was joined by appellant. After about an hour, she accepted appellant's invitation to go to his residence and watch videos with him and some of his friends. K.T. testified that at appellant's house, she was surreptitiously drugged and, while unconscious, sexually assaulted by appellant and another man.[1] A bottle containing GHB and photographs of K.T. unconscious and naked were found in appellant's residence during a police search the following day.

---

[1] The other man was Scott Cannon, who was jointly tried with appellant. The jury found Cannon not guilty.

The defense offered evidence that K.T. brought the GHB with her to appellant's residence and had consumed it voluntarily. The defense also asserted that K.T. engaged in consensual sexual intercourse with appellant and accused him of sexual assault in order to hide the truth from her boyfriend.

A complete summary of the evidence can be found in the previous opinions. *See Casey II*, 215 S.W.3d at 875-78; *Casey I*, 160 S.W.3d at 221-23. In this opinion, we will discuss the evidence in greater detail only as necessary to address the points of error.

### *Cross-Examination of Complainant*

In point of error six, appellant contends that the trial court improperly limited his cross-examination of K.T. by refusing to allow him to question her regarding her history of employment at topless clubs and her familiarity with drug use at those clubs. In an offer of proof outside the jury's presence, K.T. said that she had worked as a dancer at a number of topless clubs in the Dallas area. Asked if it is common for topless dancers to use drugs or alcohol, she answered, "There's always a person that do[es], yes, it's not the majority, no." K.T. denied ever using GHB or seeing another woman voluntarily take GHB, but she said that she had seen women get sick after men "put stuff in their drinks at the table." The trial court ruled that the defense could ask K.T. if she brought the GHB to appellant's house, but could not "go further into that line of questioning."

Appellant argues that the disallowed testimony "was relevant to the defensive theory that K.T. voluntarily ingested GHB, knowing it would cause unconsciousness, and consented to any sexual acts with [appellant]." He urges that the excluded evidence "tended to prove K.T. brought GHB to Casey's home and, consequently, consented to the sex, a contested fact."

We find no reversible error in the trial court's ruling. The fact of K.T.'s employment at a topless club was known to the jury. Far from supporting appellant's defensive theory, the offer of proof reflects that K.T. denied using GHB, denied that it was commonly used by dancers at topless clubs, and denied ever seeing a woman voluntarily take it. Later, in answer to a question by defense counsel in the jury's presence, K.T. testified that women given GHB "usually either pass out, they don't remember what happened, or their body rejects it, or if you don't mix it—if you give them too much they just die."

The challenged ruling has not been shown to have unreasonably hindered appellant's ability to present his defense. In fact, by convicting appellant of the lesser included offense of sexual assault, the jury necessarily found that appellant did not administer GHB to K.T., or at least that the State failed to prove that he did. Any error in the trial court's ruling was harmless. *See* Tex. R. App. P. 44.2(b). Point of error six is overruled.

### *Testimony Regarding Complainant's Motive*

In point of error four, appellant contends that the trial court erred by excluding evidence regarding the relationship between K.T. and her boyfriend, Christopher Nunn. Nunn dated K.T. off and on during the two years preceding the alleged offense. After awakening at appellant's residence on the morning of April 25, K.T. drove to Nunn's apartment and told him that appellant had sexually assaulted her. Nunn took K.T. to the hospital.

Nunn had introduced K.T. to appellant, but he later advised her to avoid him. Although K.T. and Nunn were not dating in April 2000, K.T. testified that she and Nunn had once

4

discussed marriage and that she still loved him. She acknowledged that Nunn "wouldn't be happy" if he learned that she had sexual intercourse with appellant.

Appellant contends that the trial court abused its discretion by refusing to permit the defense to question Nunn about incidents that occurred in 2001, about a year after the alleged sexual assault. *See Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001) (stating that decision to exclude evidence is reviewed for abuse of discretion). In an offer of proof, Nunn testified that on two occasions, K.T. came to his residence and would not leave, forcing him to call the police to have her removed. Appellant urged that this testimony showed that K.T. was "tenaciously holding on to this man" and was admissible to show her motive to falsely accuse appellant. The court found that the testimony was irrelevant because the incidents referred to happened one year after the alleged offense and after K.T. had made her accusations against appellant.

The trial court could reasonably conclude that because the incidents at Nunn's residence took place long after K.T. accused appellant of sexually assaulting her, they had no relevance to her state of mind or motive to falsely accuse him. In any event, more probative evidence of K.T.'s alleged motive was adduced through her own testimony that she still loved Nunn and that Nunn would not be happy to know that she had sexual intercourse with appellant. In addition, Alana Geblein, appellant's former girlfriend who also knew K.T. and Nunn, testified that K.T. was obsessed with Nunn and called him on the telephone "over and over and over again." According to Geblein, Nunn "wanted her to be obsessive about him. He did things intentionally to provoke her behavior." She also said that Nunn was very jealous of appellant and that Nunn "would never talk to [K.T.] again if he found out that she had anything to do with [appellant]."

5

In light of the other evidence tending to show K.T.'s motive to falsely accuse appellant of sexual assault, we conclude that any error in the exclusion of the challenged evidence did not substantially affect appellant's defense. *See* Tex. R. App. P. 44.2. Point of error four is overruled.

### *Testimony Regarding Photographs*

In point of error five, appellant contends that the trial court abused its discretion by limiting defense questioning of Geblein regarding photographs introduced as State's exhibits 71 through 76 and 78. The photographs were developed from film found in a camera seized during a search of appellant's residence. Exhibits 74, 75, and 76 show an unidentified woman lying naked on a couch or bed. She appears to be asleep or unconscious. Exhibit 71 is a close-up of the woman's genitals. In exhibit 72, an unidentified man is inserting a long object into the woman's vagina. In exhibit 73, the same man is pushing a drink can into the woman's vagina. In exhibit 78, a different unidentified man is performing cunnilingus on the woman.[2]

Geblein testified that she had worked as a cocktail waitress at two topless clubs in Dallas. She was shown the photographs and asked if she had ever seen photographs like them. She said that she had. Geblein testified "that's how people [who worked at or frequented topless clubs] would party. People would take pictures." Geblein said that it would not surprise her that the woman pictured had consented to the activity shown. Geblein also testified that GHB was

---

[2] In *Casey I* we held that these photographs were erroneously admitted. 160 S.W.3d at 226-27. The court of criminal appeals disagreed, finding them to be "strong evidence that K.T. did not consent on the night in question." *Casey II*, 215 S.W.3d at 882.

commonly used as a recreational drug at topless clubs and that after using GHB the women would often engage in conduct of the sort shown in the photographs.

When defense counsel asked Geblein if she had ever been "in those kinds of situations," the State objected to the relevance of the question. The court removed the jury and sustained the objection. The court admonished counsel, "We are not going to have [Geblein] testifying about her personal sexual experiences, doesn't have anything to do with this trial." The court also ruled, "I'm not going to let her testify to the nature of these photographs other than there's a girl in them that appears to be passed out."

Appellant urges that Geblein's testimony "was crucial to depreciate the impact of the vivid pictures and to offer an alternative explanation than that proffered by the State." He argues that having introduced the photographs over his objection, "the trial court was required to permit the defense to introduce evidence regarding its theory of the case." Appellant does not, however, identify the testimony that he claims was erroneously excluded by the court. Geblein was permitted to testify in support of appellant's defensive theory that drug use and sexual conduct of the sort shown in the photographs were common among persons employed by topless clubs, and that the woman in the photographs may have consented to the acts shown. Appellant did not make an offer of proof regarding other questions he would have asked Geblein or her answers. *See* Tex. R. Evid. 103(a)(2). Point of error five presents nothing for review and is overruled.

### *Application of Rule 614 and Ineffective Assistance*

In point of error seven, appellant contends that his trial counsel rendered ineffective assistance because he: (1) failed to challenge a biased jury member, and (2) told appellant's mother

7

that she could sit in the courtroom during jury arguments at the conclusion of the guilt stage of trial in violation of the witness exclusion rule. *See* Tex. R. Evid. 614. In point of error eight, appellant contends that the trial court abused its discretion by refusing to permit his mother to testify at the punishment stage. These allegations were raised in a motion for new trial filed by appellant's counsel on appeal. The motion was overruled by the trial court following a hearing.

### *Biased Juror*

The testimony adduced at the new trial hearing related to appellant's contention that counsel failed to challenge a biased juror. Dora Rodriguez Casey, who married appellant following his conviction, testified that she sat outside the courtroom during jury selection. She said she overheard a man state during a telephone conversation, "This is a bullshit case. I don't know why we are trying it. These guys should be in prison anyways." After jury selection was completed, she saw that this man had been chosen to serve. She testified that when she told appellant's attorney what she had heard the man say, he replied, "I don't think we should take it to the Judge because we are going to piss her off. And what she's going to end up doing, she's going to let him sit on the Jury anyways, so what's the point."

The juror in question was identified as Jeffrey Kaiser, who served as jury foreman. Kaiser testified at the hearing and acknowledged making telephone calls during breaks in the jury selection process. He denied, however, making the statements attributed to him by Dora Casey. Kaiser testified that he did not consider appellant's trial to be a "bullshit case" and was not of the opinion before trial that the defendants should go to prison. Kaiser testified that he waited until he heard all of the evidence before making up his mind about the case.

8

When reviewing a trial court's denial of a motion for new trial, we must view the evidence in the light most favorable to the ruling and presume that all reasonable fact findings were made against the losing party. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the ruling. *Id*. In this case, the trial court could reasonably resolve the conflicting testimony by believing Kaiser's testimony in which he denied making the statements attributed to him by Dora Casey. We must defer to the trial court's determination as to the relative credibility of the witnesses. We overrule appellant's seventh point of error insofar as it asserts that counsel permitted a biased juror to serve.

### Witness Exclusion

An affidavit from appellant's mother, Marsha Perkins, was attached to the motion for new trial and introduced in evidence at the hearing. In the affidavit, Perkins stated, "I understood that, when the testimony was closed, that all parties were released from the order of the court that anyone who would be a witness in the case could not be in the courtroom and I, along with the complainant and several other persons who were witnesses sat in the courtroom to hear the final argument of counsel." Her affidavit continues, "When I was called as a witness in the punishment part of the trial, I was told by the judge that I could not testify because I had been present in the courtroom during the guilt-innocence stage of the trial."[3] Neither Perkins nor appellant's trial

---

[3] The reporter's record does not reflect that Perkins was called as a witness at the punishment stage. While questioning another witness, however, defense counsel referred to "members of [appellant's] family" who "have been sitting in the courtroom and so they can't testify." The State does not deny that the trial court excluded Perkins's testimony.

9

counsel testified at the hearing. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (holding trial court may decide motion for new trial based on affidavits admitted in evidence without hearing oral testimony) (quoting *Scaggs v. State*, 18 S.W.3d 277, 281 (Tex. App.—Austin 2000, pet. ref'd)).

Rule 614 provides for the exclusion of witnesses "so that they cannot hear the testimony of other witnesses." Tex. R. Evid. 614. The rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). The rule was invoked in this case, but neither party cites authority holding that the rule applies to a potential punishment witness who hears guilt stage jury argument. We will assume, without deciding, that it does.

Perkins's affidavit did not state that she was told by appellant's counsel that she could return to the courtroom to listen to the arguments. Instead, she merely stated that she "understood" that she could do so. Because there is no evidence that appellant's trial counsel told Perkins that she could listen to jury arguments at the guilt stage or that counsel knew that she had entered the courtroom, we overrule appellant's contention that counsel was ineffective in this regard. Point of error seven is overruled.

When deciding whether to disqualify a defense witness for violating the witness sequestration rule, a trial court must balance the interests of the parties, including the defendant's constitutional right to call witnesses in his own behalf, consider alternative sanctions, and weigh the benefit and detriment arising from a disqualification in light of the nature and weight of the testimony to be offered. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003) (citing

10

*Webb v. State*, 766 S.W.2d 236, 244 (Tex. Crim. App. 1989)).  When reviewing a trial court's decision to exclude a defense witness, an appellate court must decide:  (1) if there were particular circumstances, other than the mere fact of the violation, which tend to show that the defendant or his counsel consented, procured, or otherwise had knowledge of the witness's presence in the courtroom knowing the content of the witness's testimony; and (2) if no particular circumstances existed to justify disqualification of the witness, if the excluded testimony was crucial to the defense.  *Webb*, 766 S.W.2d at 245.

There is no evidence that appellant or his trial counsel consented to, procured, or otherwise had knowledge of Perkins's presence in the courtroom during jury argument at the guilt stage.  Insofar as the record reflects, the trial court disqualified Perkins based solely on the fact that the rule was violated.  Therefore, we must decide whether the excluded testimony was crucial to the defense.  Because Perkins was prevented from testifying at the punishment stage, we must consider the effect her testimony might have had on the jury's punishment decision, including appellant's request for probation.

In her affidavit, Perkins said that she would have testified that:  (1) appellant gave life-saving bone marrow to his sister; (2) she had seen "a remarkable change" in appellant's life since he moved out of the house where the alleged offense took place; (3) appellant had stopped going to clubs and had begun to settle down; (4) appellant's life had previously "revolved around some male friends which I believe had provided a very bad influence on him," and that his lifestyle "made a dramatic change after he became engaged and began to live a life that revolved around home and family"; (5) she believed that appellant would not be a danger to anyone if granted probation and

11

would be a positive influence on others, including new friends he had made; and (6) she would ask the jury to grant appellant probation "so that he could continue the life he had developed in the past year and a half, rather than punish him for something that was alleged to have occurred almost two years prior to the date of the trial."

Deciding what punishment to assess is a normative process, not intrinsically fact bound. *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002) (quoting *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1989) (plurality op. on reh'g)). Other than appellant's eligibility for probation, a fact that was not in dispute, the jury in this case was not required to determine the existence of any discrete facts at the punishment stage. Although Perkins's testimony might have been helpful to the jury in determining the appropriate punishment, we do not believe that it was crucial to that determination. Appellant's then-fiancee, Dora Rodriguez, testified in a manner substantially similar to Perkins's proffered testimony. Rodriguez testified that appellant's life had changed since the events in question, that he had stopped going to topless bars, and that he had "done a lot for our house. He's done a lot for me, done a lot for my mom. And he's a great asset to us." Rodriguez testified to appellant's having given the bone marrow to his sister. She also described how appellant had helped her and her mother with her father, who had recently lost a leg. She said, "[Appellant] is the one that helps me take him to the hospital. He goes with him, carries my dad, puts him in his wheelchair, helps him to the car so I can go to the hospital." Rodriguez's half-brother, a Dallas Area Rapid Transit police officer, testified that appellant had been living with his sister and their mother for two years, helped pay the bills and maintain the house, and had helped Dora with her father. He was of the opinion that appellant was a good candidate for probation,

12

although he admitted that he had only recently learned of appellant's criminal difficulties. Finally, appellant personally testified to the recent changes in his life. Appellant said that he was no longer involved with topless dancers and drinking. "And I don't hardly hang out with my friends any more. I stay with my family and my girlfriend and that's basically about it."

Even if the trial court erred by refusing to permit Perkins to testify, we are satisfied beyond a reasonable doubt that the error did not contribute to the punishment assessed. *See* Tex. R. App. P. 44.2(a); *Webb*, 766 S.W.2d at 246 (applying test for constitutional error). The State proved that appellant had four previous convictions, none of which disqualified him for probation: (1) a 1991 misdemeanor theft for which he received deferred adjudication; (2) a 1992 misdemeanor attempted criminal trespass for which he received deferred adjudication; (3) a 1994 felony theft for which he received deferred adjudication and which was subsequently dismissed; and (4) a 1999 misdemeanor driving while intoxicated for which he received a probated sentence. The State also offered the testimony of A.Y., who once worked as a topless dancer in the same club at which K.T. had been employed. A.Y. testified that in October 2000, she was with a group of people at appellant's house when she passed out after being given a drink. She woke up the next morning in appellant's housemate's bed, naked. She had been sexually assaulted. The State offered evidence that seminal fluid found on A.Y.'s underwear contained appellant's DNA. Appellant denied having sexual intercourse with A.Y., but acknowledged being present on the night in question. In light of all the testimony and other evidence introduced at the punishment stage, we are convinced that the jury's punishment decision would not have been altered by Perkins's testimony. Point of error eight is overruled.

13

Finding no reversible error in appellant's remaining points of error, we affirm the judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed on Remand

Filed:   October 5, 2007

Do Not Publish