Opinion issued January 11, 2007 















In The

Court of Appeals

For The

First District of Texas






NOS. 01-05-01095-CR & 01-05-01096-CR

__________


ROBERT LEE SMITH, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause Nos. 961276 & 966324






MEMORANDUM OPINION

 In two separate cases, (1) a jury found appellant, Robert Lee Smith, guilty of the
offense of aggravated sexual assault of a child (2) and assessed his punishment at
confinement for fifty years in each case, with the sentences to run concurrently. (3)
 In
six issues, appellant contends that the evidence is legally and factually insufficient
to support his convictions and that he received ineffective assistance of counsel. 

 We affirm. 

Factual and Procedural Background


 Sheila DeGar, the complainant's mother, testified that on August 2, 2003,
DeGar and appellant, who was the father of her 11-year-old son, went to a bar,
returned to DeGar's home during the early morning hours of August 3, 2003, watched
television, and then fell asleep on the living room floor. DeGar awoke around 6:30
a.m., and appellant was no longer in the room. When appellant returned to the living
room around 7:15 a.m., it appeared that appellant was coming from her daughter's
bedroom. However, DeGar did not see which door appellant came out of when he
returned to the living room. Appellant stayed at DeGar's house until later that
afternoon. 

 DeGar explained that the complainant, who was behaving strangely that day,
seemed angry, was cursing, and was "getting attitudes." The complainant called
Amanda Clark, her best friend, packed a bag of clothes, and waited for Clark to pick
her up to go to Clark's house. Later, DeGar and Clark's mother had a "serious
conversation" about appellant. DeGar then took the complainant to Texas Children's
Hospital for an examination. DeGar explained that after the assault, the complainant
had "very bad moods," tried to kill herself twice, and gained 100 pounds. DeGar also
stated that the complainant now eats and sleeps a lot, spends lots of time secluded in
her room, is scared to bathe without her mother, and maintains a friendship only with
Clark. DeGar testified that appellant had previously commented to her that the
complainant "was finer than a mother fucker." 

 The complainant testified that in June 2003, when she was 13 years old,
appellant entered her bedroom as she was sleeping, got into her bed, kissed her back,
squeezed her breasts, and tried to pull down her pants. However, she got up from her
bed and ran to the bathroom. When appellant asked her if she was going to tell her
mother, the complainant said no. The complainant also stated that appellant had
previously called her, said things of a sexual nature, and told her that she was "fine." 
 The complainant further testified that in the early morning of August 3, 2003,
appellant entered her bedroom, woke her up, touched her breasts, pulled her
nightgown up, and kissed her neck and breasts. Appellant kissed her stomach,
removed her panties, and put his tongue and finger in her vagina for about five
minutes. Appellant then got up, closed the door, unzipped his pants, and exposed his
penis to the complainant. Although the complainant squeezed her legs together,
appellant laid down on top of the complainant, pulled her legs apart, and stuck the tip
of his penis in her vagina for about five minutes. The complainant was crying, but
appellant could not see her crying. Appellant then got up, and as he left the room,
told the complainant, "Girl, you tough." The complainant explained that she did not
yell because she was in shock. 

 After the assault, the complainant called Clark and packed some clothes
because she did not want to return home "for a long time." The complainant
explained that she was not mad or sad, but simply did not want appellant at her house. 
She stated that at the time of the assault she was 13 years old and was not married. 
After the assault, the complainant had bad nightmares for a couple of months, cut her
wrists, took some pills, and now eats a lot. Also, she has her mother bathe with her
and accompany her to school. The complainant also stated that although she "liked"
appellant's son, she did not have a "crush" on him or like him as a "boyfriend."

 Clark testified that during the late summer of 2003, the complainant told her
a "secret" about appellant, who was the complainant's stepfather, and that the
complainant was sad when she told Clark the secret. Clark then told her mother the
secret, so that her mother could inform the complainant's mother. Clark also stated
that during the summer preceding the assault, appellant had called Clark's house
while the complainant was there, and spoke "nasty" and in a sexual nature to the
complainant. Clark noted that she thought that the complainant had a crush on
appellant's son, who Clark characterized as the complainant's stepbrother.

 Houston Police Officer E. Byrd Jr. testified that when he responded to a call
at the complainant's house on August 3, 2003, the complainant was "very calm" and
was not crying. However, Houston Police Officer Heidi Ruiz stated that when she
interviewed the complainant after the assault, the complainant was "upset, angry,
[and] fearful." Ruiz noted that there was no "usable" DNA found during the
complainant's sexual assault exam. Ruiz stated that when contacted, appellant came
to the police station voluntarily to be interviewed, denied committing the assault, and
asserted that he had had sex with the complainant's mother earlier in the morning on
the day of the assault. 

 Clifford Mishaw, a pediatrician, testified that, on August 3, 2003, he evaluated
the complainant based on an allegation of sexual abuse. Although the complainant's
exam was normal, Mishaw expected as much, based on the fact that the complainant
knew the perpetrator and that the incident did not involve a physically violent,
traumatic assault. However, Mishaw also noted that the exam was consistent with a
person who had not been sexually abused. 

 At the beginning of his testimony, appellant explained that he had been "in
trouble with the law before" and had previous criminal convictions for possession of
a controlled substance, burglary of a building, burglary of a habitation, possession of
marijuana, manslaughter, and delivery of marijuana. Appellant stated that he
accompanied DeGar to a bar on the evening of August 2, 2003, before the assault,
returned to DeGar's house, had sex with DeGar in DeGar's bedroom, and he and
DeGar went to sleep in the living room. Appellant awoke around 7:00 a.m., and 
DeGar awoke several hours later. Appellant testified that he did not assault the
complainant and did not enter her bedroom. Appellant further testified that although
he had previously called the complainant at Clark's home, he said that he was
"watching out" for the complainant because things were getting "out of control" and
that DeGar had asked him to "check" on the complainant. Appellant stated that the
complainant had a crush on his son, but he disapproved of any relationship between
his son and the complainant because they were "like brother and sister." He also
stated that the complainant was dressing inappropriately for her age. Appellant
explained that although he had commented that the complainant was getting bigger
and "was going to get someone in trouble," he denied ever making any comments of
a sexual nature to the complainant. 

Factual and Legal Sufficiency

 In his first four issues, appellant argues that the evidence is legally and
factually insufficient to support his convictions. We review the legal sufficiency of
the evidence by viewing the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502,
509 (Tex. Crim. App. 2005). The trier of fact is the sole judge of the weight and
credibility of the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000). Thus, when performing a legal sufficiency review, we may not reevaluate the
weight and credibility of the evidence and substitute our judgment for that of the fact
finder. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, i.e., that the jury's
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). In
performing a factual sufficiency review, we are to give deference to the fact finder's
determinations, including the determinations involving the credibility and demeanor
of witnesses. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may
not substitute our judgment for the fact-finder's. Watson, 204 S.W.3d at 414-15.

 A person commits the offense of aggravated sexual assault of a child (4)
 if the
person intentionally or knowingly causes the penetration of the anus or sexual organ
of a child by any means or causes the sexual organ of a child to contact or penetrate
the mouth, anus, or sexual organ of another person, including the actor, and the child
is younger than fourteen years of age. Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i),
(iii), (2)(B) (Vernon Supp. 2006). Here, the jury found appellant guilty of sexually
assaulting the complainant by causing the complainant's sexual organ to contact his
sexual organ and also by causing the sexual organ of the complainant to contact his
mouth.

 Appellant first argues that the evidence is legally insufficient to support his
conviction because (1) there is no DNA evidence proving that the complainant had
been sexually assaulted; (2) the complainant's suffering of depression, weight gain,
anxiety and sleep disorders could have been caused by something other than sexual
abuse; (3) the complainant, in relating her account to Officer Byrd, was very calm,
was not crying, and did not appear angry or frustrated; (4) the medical evidence is
consistent with someone who had not been sexually assaulted; (5) appellant
voluntarily arranged for his niece to take him to the police station for an interview;
and (6) appellant denied going into the complainant's room on the night of the
offenses. Appellant also asserts that the complainant had a motive to "go after" him
because she had a crush on appellant's son and appellant disapproved of any
relationship. Appellant also emphasizes the contradictory testimony between Clark
and the complainant regarding whether the complainant had a crush on his son.

 Here, the complainant testified that appellant pulled her nightgown up, took off
her panties, put his tongue and finger in her vagina for about five minutes and, after
he closed the door, pulled her legs apart and stuck the tip of his penis in her vagina
for about five minutes. The complainant and DeGar also testified that the
complainant was 13-years old at the time of the assault. Evidence is legally sufficient
as long as it provides the requisite proof needed to satisfy the elements of the offense.
Bousquet v. State, 47 S.W.3d 131, 137 (Tex. App.--Houston [1st Dist.] 2001, pet.
ref'd). Furthermore, a complainant's testimony, standing alone, may provide legally
sufficient evidence to support a conviction for sexual assault. See Villalon v. State,
791 S.W.2d 130, 133 (Tex. Crim. App. 1990); Jordan-Maier v. State, 792 S.W.2d
188, 190 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd); Ruiz v. State, 891 S.W.2d
302, 304 (Tex. App.--San Antonio 1994, pet. ref'd). 

 Although appellant makes several assertions about the credibility and
demeanor of the complainant, the trier of fact is the sole judge of the weight and
credibility of the evidence. Margraves, 34 S.W.3d at 919. Furthermore, the
"reconciliation of conflicts in the evidence is within the exclusive province of the
jury," and the jury is free "to believe some testimony and disbelieve other testimony." 
Id. Finally, we note that the lack of medical or DNA evidence does not render the
evidence supporting appellant's conviction legally insufficient. See Washington v.
State, 127 S.W.3d 197, 205 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd,
untimely filed). Here, there is no evidence that appellant ejaculated and, although
Mishaw testified that the complainant's examination was normal, he explained that
this was consistent with the circumstances surrounding the assault. Accordingly,
"[t]he jury could have reasonably believed that [the complainant] was sexually
assaulted, but that, due to the circumstances of the assault, there was no physical
evidence of the assault remaining." See id.

 Viewing all the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offenses beyond a reasonable doubt. Accordingly, we hold that the evidence is
legally sufficient to support appellant's convictions for the offenses of aggravated
sexual assault of a child.

 Appellant next argues that the evidence is factually insufficient to support his
conviction because the evidence suggests "a convoluted story told by a disturbed
child who may have been previously molested by her mother's fiancé and who was
upset that the appellant did not approve of her crush on his son." Appellant also
argues that there is medical evidence indicating that the assault did not occur and that
the complainant lacks credibility because her testimony contradicted Clark's
testimony concerning whether she had a crush on appellant's son. Finally, appellant
emphasizes that he denied that entered the complainant's room, he went to the police
station voluntarily to be interviewed, and he denied stating that the complainant
looked "fine."

 In addition to the complainant's testimony concerning the actual assault, the
complainant testified that appellant had previously come into her bed, kissed her on
the back, and tried to pull her panties down. The complainant and Clark also testified
that, prior to the assault, appellant would call the complainant and talk "nasty" and
sexually to the complainant. Officer Ruiz stated that when she interviewed the
complainant, the complainant was "upset, angry, [and] fearful." DeGar testified that
when she saw appellant return to the living room around 7:15 a.m., it appeared that
appellant was coming from the complainant's bedroom. DeGar also stated that the
complainant behaved strangely and seemed angry and that after the assault, the
complainant had "very bad moods," tried to kill herself twice, and gained 100 pounds.
Finally, DeGar testified that appellant had previously commented that the
complainant "was finer than a mother fucker." 

 It is true that Officer Byrd testified that when he met with the complainant, she
was "very calm," that Clark and the complainant provided conflicting testimony
concerning whether the complainant had a crush on appellant's son, and that
appellant denied committing the assault. However, the jury, as the sole judge of the
credibility of witnesses and the weight to be given to their testimony, was entitled to
resolve any credibility issues against appellant. See Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000); Cain, 958 S.W.2d at 408-09; Robles v. State, 104 S.W.3d
649, 652 (Tex. App.--Houston [1st Dist.] 2003, no pet.). The jury was free to believe
or disbelieve appellant's theory that the complainant was motivated to make false
accusations against him because he disapproved of any relationship between her and
his son. See Casey v. State, 160 S.W.3d 218, 224 (Tex. App.--Austin 2005, no pet.). 
Finally, because of the circumstances presented in this case, the lack of medical or
DNA evidence does not render the evidence supporting appellant's conviction
factually insufficient. See Washington, 127 S.W.3d at 205. We conclude, viewing
the evidence neutrally, that the evidence is not so weak that the verdict is clearly
wrong or manifestly unjust or that the proof of guilt is against the great weight and
preponderance of the evidence. Accordingly, we hold that the evidence is factually
sufficient to support appellant's convictions for the offenses of aggravated sexual
assault of a child. 

 We overrule appellant's first four issues. 

Ineffective Assistance

 In his fifth and sixth issues, appellant argues that he received ineffective
assistance of counsel at the guilt phase of his trial because his counsel (1) failed to
file a discovery motion and request notice of the State's intention to introduce
evidence of extraneous offenses and prior convictions under Texas Rules of Evidence
404(b) and 609(f), (5) (2) failed to subpoena witnesses, (3) failed to make an opening
statement, (4) introduced appellant's four remote prior felony convictions and one
remote misdemeanor conviction on direct examination, (5) failed to request a limiting
instruction that appellant's prior convictions could be considered only for
impeachment, and (6) failed to object to the State's misstatement of the law in closing
argument. Within his ineffective assistance argument, appellant also asserts that his
counsel was ineffective for failing to file a written motion for continuance.

 The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052,
2064 (1984). Strickland requires a two-step analysis whereby an appellant must show
both that (1) counsel's performance fell below an objective standard of
reasonableness and (2) but for counsel's unprofessional error, there is a reasonable
probability that the result of the proceedings would have been different. Id. at 687,
104 S. Ct. at 2064; Vasquez v. State, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992).
Strickland defines reasonable probability as a "probability sufficient to undermine
confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068.

 In reviewing counsel's performance, we look to the totality of the
representation to determine the effectiveness of counsel, indulging a strong
presumption that her performance falls within the wide range of reasonable
professional assistance or trial strategy. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly
supported in the record. Id. Because of the presumption that counsel's actions and
decisions were reasonably professional or were motivated by sound trial strategy, it
is extremely difficult to show that trial counsel's performance was deficient when
there is no proper evidentiary record developed at a hearing on a motion for new trial. 
See Sudds v. State, 140 S.W.3d 813, 819 (Tex. App.--Houston [14th Dist.] 2004, no
pet.) (citing Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). 


Discovery Motion

 Appellant first argues that his trial counsel was ineffective because she "failed
to file a Discovery Motion." Here, appellant cites only to Clark's testimony about
appellant's statements made during his phone calls to the complainant while she was
at Clark's house. At trial, appellant's counsel objected when Clark began discussing
these phone calls. During her objection, appellant's counsel noted that although the
State had provided appellant with notice of other statements made by appellant it
intended to use at trial, the phone conversations were not disclosed. In response to
appellant's objection, the trial court reviewed its file, discovered that there was no
discovery order in place, and permitted Clark's testimony. The trial court also
overruled appellant's objection that the testimony was more prejudicial than
probative. 

 Regardless of whether his trial counsel's failure to file a discovery motion,
when no discovery order was in place, (6) fell below an objective standard of
reasonableness, appellant has failed to show that he suffered any harm. We note that
the record establishes that appellant's trial counsel effectively cross-examined Clark
concerning appellant's statements in the phone calls, and Clark conceded that she had
not previously told anyone about these phone calls. Appellant did not make any
showing of a reasonable probability that the result of the proceedings would have
been different if his trial counsel had filed a discovery motion. See In re K.M.H., 181
S.W.3d 1, 9-10 (Tex. App.--Houston [14th Dist.] 2005, no pet.) (stating that record
did not reveal whether counsel conducted informal discovery and, thus, court could
"only speculate why counsel did not conduct formal discovery and what such
discovery [would] have revealed"). Accordingly, we hold that appellant's trial
counsel's failure to file a discovery motion does not support a claim of ineffective
assistance.

Notices Under Rules 404(b) & 609(f)

 Appellant next argues that his trial counsel was ineffective because she
"fail[ed] to request [notice under Texas Rules of Evidence] 404(b) and Rule 609(f)." 
However, the State filed a notice in accordance with Rules 404(b) and 609 several
weeks before trial, and specifically identified the extraneous offenses, including
appellant's prior convictions, that the State intended to introduce at trial. 
Accordingly, we hold that appellant's trial counsel's conduct in failing to file a
separate request for "notice of the State's intention to introduce evidence of
extraneous offenses" did not fall below an objective standard of reasonableness and
does not support a claim of ineffective assistance.

Subpoenas and Motion for Continuance

 Appellant next argues that his trial counsel was ineffective because she "failed
to file subpoenas properly" for two potential witnesses: Robert Smith, Jr., appellant's
son, and Jocques DeGar, Sheila DeGar's fiancé. Appellant asserts that his trial
counsel failed to file subpoenas in a "timely manner" and also put the incorrect date
on the subpoenas. Regarding the subpoena to Smith, Jr., appellant's trial counsel
stated on the record that her decision to wait to subpoena appellant's son until the day
before trial was due to her reliance on appellant's representation to her that his son
was willing to come to court and testify. She then stated that her process server had
"personally served" appellant's son and that a deputy had also posted the subpoena
on the door of the son's residence. When appellant's son did not appear for trial on
November 16, 2005, she called and spoke with his aunt, who told her that the
subpoena was dated for November 17, 2005. The deputy who prepared the subpoena
then stated on the record that his activity report indicated that he had dated the
subpoena for November 16. Although the deputy conceded that he could have made
a typographical error, there is no copy of the subpoena in the record. Thus,
appellant's claim that his son was not properly served because the subpoena
contained an incorrect date is not firmly supported in the record.

 Regarding the subpoena to Jocques DeGar, the record establishes that
appellant's trial counsel attempted to serve DeGar on the day before she attempted
to call him as a witness. After hearing evidence concerning service on Jocques, the
trial court found that he "was never personally served." Appellant's trial counsel then
proffered that Jocques would testify that he had previously told appellant that he had
seen Sheila DeGar's other boyfriend "doing some inappropriate things" with the
complainant, like "being in bed" with the complainant and walking around in his
underwear in front of the complainant. The court concluded, based on this proffer,
that Jocques's testimony would be inadmissible. On appeal, appellant has not
explained how this proffered testimony would be admissible or relevant to the instant
case. However, even assuming the failure to timely serve Jocques with a subpoena
fell below an objective standard of reasonableness, we conclude that appellant has not
made any showing that but for his trial counsel's error, there is a reasonable
probability that the result of the proceedings would have been different. Accordingly,
we hold that appellant's trial counsel's failure to "file subpoenas properly" does not
support a claim of ineffective assistance.

 Appellant also argues that his trial counsel was ineffective for failing to file a
written motion for continuance so that his witnesses could be arrested and made to
appear. The record reveals that appellant's trial counsel orally requested a
continuance, but did not file a written motion. Neither party disputes the trial court's
finding that Jocques was not served and Jocques could not have been arrested and
made to appear. Moreover, appellant's trial counsel proffered that appellant's son
would have testified that (1) the complainant told him that she would have changed
"some of her testimony concerning this case but for the fact that her mother would be
mad at her" and (2) the complainant "wanted to be with [the appellant's son]
sexually," but appellant disapproved of their relationship. The trial court stated that
the first topic was inadmissible and that the second topic was already before the jury
by Clark's and the complainant's conflicting testimony. Thus, appellant has failed
to show that his trial counsel's failure to file a written motion for continuance fell
below an objective standard of reasonableness and that, but for his counsel's failure
to file a motion, there is a reasonable probability that the result of the proceedings
would have been different. Accordingly, we hold that trial counsel's failure to file
a written motion for continuance does not support a claim of ineffective assistance.

Opening Statement 

 Appellant next argues that his trial counsel was ineffective because she failed
to make an opening statement. However, the failure to give an opening statement
may be a tactical decision that is part of a plausible trial strategy. See Taylor v. State,
947 S.W.2d 698, 704 (Tex. App.--Fort Worth 1997, pet ref'd) (stating that choosing
not to make opening statement is"inherently tactical" decision); Standerford v. State,
928 S.W.2d 688, 697 (Tex. App.--Fort Worth 1996, no pet.) (holding that failure to
make opening statement did not support ineffective assistance claim because
statement "would have given the State a preview of the defense's strategy" and
"[c]ounsel clearly made a tactical decision"). Accordingly, we hold, based on the
limited record before us, that appellant's trial counsel's failure to make an opening
statement does not support a claim of ineffective assistance.

Prior Convictions

 Appellant next argues that his trial counsel was ineffective because she
"introduced four remote felony convictions and [one] remote misdemeanor conviction
into evidence." Appellant asserts that there "can be no plausible benefit to be gained
by 'fronting' the issue of remote prior convictions to the jury" especially "in light of
the fact that the State would not have been able to introduce them."

 Rule 609 provides:

(a) General Rule: For the purpose of attacking the credibility of a
witness, evidence that the witness has been convicted of a crime shall be
admitted . . . only if the crime was a felony or involved moral turpitude,
regardless of punishment, and the court determines that the probative
value of admitting this evidence outweighs its prejudicial effect to a
party. 


(b) Time Limit: Evidence of a conviction under this rule is not
admissible if a period of more than ten years has elapsed since the date
of the conviction or of the release of the witness from the confinement
imposed for that conviction, whichever is the later date, unless the court
determines, in the interests of justice, that the probative value of the
conviction supported by specific facts and circumstances substantially
outweighs its prejudicial effect.


Tex. R. Evid. 609. 

 Prior to trial, the State filed notices stating that it intended to introduce
appellant's prior convictions pursuant to Rule 609. Appellant elected to testify
during the guilt phase of the trial and, apparently in an attempt to be open and honest
with the jury and to lessen any impact of impeachment, appellant, at the very
beginning of his direct-examination, agreed that he had been "in trouble with the law
before" and had previous criminal convictions for possession of a controlled
substance, burglary of a building, burglary of a habitation, possession of marijuana,
manslaughter, and delivery of marijuana. Appellant stated that he was not "trying to
hide" his prior convictions from the jury. 

 Although a record was developed at a hearing on a motion for new trial,
appellant's admission of his prior convictions, contrasted against appellant's assertion
of innocence to the charge of aggravated sexual assault of a child, appears to have
been a matter of trial strategy to be candid with the jury and prevent any possible
attack from the State for failing to disclose his criminal past. See Rodriguez v. State,
129 S.W.3d 551, 558 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). Additionally,
in introducing appellant's prior convictions, appellant's trial counsel may have been
attempting to convince the jury that, despite appellant's criminal history, he had never
been convicted of a crime that was sexual in nature or involved a child.

 In regard to whether the prior convictions were admissible under Rule 609,
although appellant did not provide any details concerning the facts giving rise to
these prior convictions, appellant's prior conviction for possession of marijuana was
a misdemeanor and his other prior convictions introduced during his direct-examination were felonies. Furthermore, appellant agrees that his conviction for
possession of a controlled substance in 1994 was not remote and was admissible, and
the State agrees that appellant's misdemeanor conviction for possession of marijuana
in 1987 was inadmissible. Thus, we focus our Rule 609 analysis on the parties'
dispute regarding whether appellant's four prior felony convictions for burglary,
manslaughter, and delivery of marijuana were admissible. 

 The indictment recites that appellant was convicted of the felony offense of
possession of a controlled substance on July 25, 1994, and was convicted of the
felony offense of burglary of a habitation on September 18, 1987. Additionally, the
State's Rule 404(b) and 609 notice provides "disposition dates" for the following
convictions: possession of a controlled substance, July 25, 1994; burglary of a
building, September 18, 1987; burglary of a habitation, September 18, 1987;
manslaughter, March 10, 1978; and delivery of marijuana, May 16, 1975. Thus, the
record establishes that more than ten years had elapsed since the dates of each of the
challenged convictions. (7) However, there is no evidence in the record establishing the
exact date of appellant's release from the confinement imposed for each of the
challenged convictions. Appellant asserts that the record establishes that more than
ten years elapsed from the confinement imposed for the burglary, manslaughter, and
delivery of marijuana convictions based on the fact that appellant "picked up" his
"new conviction" for possession of a controlled substance in 1994. Appellant, thus,
asks us to infer that he was no longer confined for his prior felony convictions at the
time that he was convicted for possession of a controlled substance in 1994. 
Although appellant testified that he had been released from prison in May 2003 after
spending about seven or eight years in prison, the record does not affirmatively
establish that all of the challenged convictions were remote, and thus, admissible only
under Rule 609(b). 

 However, even considering only the dates of each challenged conviction as the
relevant date under Rule 609, the record still does not affirmatively establish that all
of the challenged convictions were remote. See Morris v. State, 67 S.W.3d 257, 263
(Tex. App.--Houston [1st Dist.] 2001, pet. ref'd) (stating that if "[t]he record is silent
as to the dates appellant was released from confinement for his prior offenses . . . we
must look at the dates of each conviction offered"). This is because, even though the
dates of the challenged convictions would render those convictions remote on their
face, Texas courts have held that subsequent convictions for felonies or
misdemeanors involving moral turpitude may remove the taint of remoteness from
prior convictions. See Lucas v. State, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989)
(stating that "[e]vidence of the lack of reformation or subsequent felony and certain
misdemeanor convictions may then cause the prior conviction to fall outside the
general rule and not be subject to the objection of remoteness" and that "[t]he
question is one of discretion for the trial court"); see also Rodriguez, 129 S.W.3d at
559; Hernandez v. State, 976 S.W.2d 753, 755 (Tex. App.--Houston [1st Dist.] 1998,
pet. ref'd); Jackson v. State, 50 S.W.3d 579, 592-94 (Tex. App.--Fort Worth 2001,
pet. ref'd). 

 Here, appellant challenges the introduction of his convictions from 1975, 1978,
and 1987. However, appellant was convicted of another felony in 1994, appears to
have been incarcerated shortly thereafter, and, within a few months of being released
from his confinement in 2003, was accused by the complainant of committing the
instant offenses. Appellant's intervening felony convictions provide evidence of
appellant's lack of reformation, and, therefore, the remoteness alone of appellant's
prior felony convictions would not have rendered them inadmissible. See Rodriguez,
129 S.W.3d at 559.

 Accordingly, we review the introduction of appellant's prior convictions under
Rule 609(a)'s "outweigh" standard. Id. To determine whether the probative value
of the prior convictions outweighs their prejudicial effect, we look to the factors set
forth by the Court of Criminal Appeals in Theus v. State: (1) the impeachment value
of the prior offense; (2) the temporal proximity of the past offense relative to the
charged offense and the witness's subsequent history; (3) the similarity between the
past offense and the offense being prosecuted; (4) the importance of the defendant's
testimony; and (5) the importance of the credibility issue. 845 S.W.2d 874, 880 (Tex.
Crim. App. 1992); see also Rodriguez, 129 S.W.3d at 559. 

 In regard to the first factor, we note that the impeachment value of prior
offenses involving deception or moral turpitude is greater than for offenses involving
violence. Theus, 845 S.W.2d at 881; Deleon v. State, 126 S.W.3d 210, 215 (Tex.
App.--Houston [1st Dist.] 2003, pet. dism'd). Additionally, violent offenses are
likely to have more of a prejudicial effect. Theus, 845 S.W.2d at 881; Deleon, 126
S.W.3d at 215. Burglary is a crime of deception rather than of violence. See LaHood
v. State, 171 S.W.3d 613, 621 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd);
White v. State, 21 S.W.3d 642, 647 (Tex. App.--Waco 2000, pet. ref'd). Delivery of
marijuana is neither a crime of deception, nor a crime of violence. See Denman v.
State, 193 S.W.3d 129, 136 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd)
(declining state's invitation to find delivery of cocaine to be a crime of moral
turpitude and finding first Theus factor to cut against admissibility of delivery of
cocaine conviction). Manslaughter does not involve deception, but may involve
violence, although there is no evidence in the record concerning the circumstances
of this conviction. See Deleon, 126 S.W.3d at 215; see also High v. State, No.
01-04-00974-CR, 2006 WL 241473, at *4-5 (Tex. App.--Houston [1st Dist.] 2006,
pet. ref'd) (not designated for publication). Therefore, the first Theus factor favors
admission of appellant's two burglary convictions, is neutral in regard to appellant's
delivery of marijuana conviction, and may favor exclusion of appellant's
manslaughter conviction.

 The second factor, temporal proximity and subsequent history, favors
admission if the past offenses are recent and the witness has demonstrated a pattern
of running afoul of the law. Theus, 845 S.W.2d at 881. As discussed above,
appellant's most recent felony offense for possession, prior to the instant offense,
occurred in 1994, and appellant was incarcerated shortly thereafter until a few months
before commission of the instant offenses. Appellant's 1994 conviction for
possession of a controlled substance was not remote for purposes of Rule 609. 
Although appellant's other challenged convictions were more than ten years old,
appellant's intervening convictions suggest appellant has not reformed his conduct
and has shown a "propensity for . . . running afoul of the law." See Rodriguez, 129
S.W.3d at 560. Thus, the second factor favors admission of appellant's prior
convictions. See id.; Jackson v. State, 11 S.W.3d 336, 340 (Tex. App.--Houston [1st
Dist.] 1999, pet. ref'd).

 The third factor concerns the similarity between the past offenses and the
offenses being prosecuted. Similarity between an offense and the current offense
militates against admissibility, whereas dissimilarity between the past offense and the
current offense favors admissibility. Theus, 845 S.W.2d at 881; Rodriguez, 129
S.W.3d at 560. The present case involves the offenses of aggravated sexual assault
of a child, which are not similar to any of appellant's prior convictions. Thus, the
third factor favors admission because there is a lessened possibility of prejudice. See
Theus, 845 S.W.2d at 881.

 The fourth and fifth factors concern the importance of appellant's testimony
and his credibility. "When the case involves the testimony of only the defendant and
the State's witnesses . . . the importance of the defendant's credibility and testimony
escalates" and "so will the need to allow the State an opportunity to impeach the
defendant's credibility." Id.; see also Jackson, 50 S.W.3d at 593 ("Generally, when
the case involves the testimony of only the defendant and the State's witnesses, the
importance of the defendant's credibility and testimony escalates."). Here, although
the State presented testimony from witnesses other than the complainant, the
complainant provided the only direct testimony concerning certain elements of the
offenses. Moreover, the credibility of the complainant and appellant were critical
issues because there was no physical evidence presented at trial. Thus, the fourth and
fifth factors favor admission to impeach appellant's credibility. See Theus, 845
S.W.2d at 881.

 We conclude that appellant's prior burglary convictions were admissible and
that appellant's other felony convictions for delivery of marijuana and manslaughter
were likely admissible. Because it also appears to have been appellant's strategy to
admit his prior convictions, we cannot conclude that his counsel provided ineffective
assistance concerning the introduction of these felony convictions. (8)
 See Rodriguez,
129 S.W.3d at 560. Furthermore, although appellant's 1987 misdemeanor conviction
for possession of marijuana was not admissible under Rule 609, had it not been
introduced into evidence, especially considering the introduction of appellant's other
prior convictions, appellant has not shown a reasonable probability that the result of
the proceedings would have been different. Accordingly, we hold that appellant's
trial counsel's introduction of appellant's prior convictions on direct-examination
does not support a claim of ineffective assistance.

Limiting Instruction

 Appellant next argues that his trial counsel was ineffective because she failed
to request a limiting instruction that appellant's prior convictions could only be
considered for impeachment. However, the trial court instructed the jury that it could
not consider evidence of appellant's prior convictions as any evidence of guilt of the
instant offenses and that such evidence was admissible "in passing upon the weight"
to give appellant's testimony. Accordingly, we hold that appellant's trial counsel's
failure to request a limiting instruction does not support a claim of ineffective
assistance.

Improper Jury Argument

 Finally, appellant argues that his trial counsel was ineffective because she
failed to object to the following improper jury argument: 

The defendant took the stand in this case. Defense counsel tells you:
Well, he came forward. He wasn't trying to hide his priors from you. 
Folks, when you listen to a witness on the witness stand, you are the
judges of credibility. That's what you're here for. That's your biggest
and most important job is to judge credibility. And as a jury, you are
entitled to hear, when somebody takes the stand if they have priors. 
There was no admission there. There was no big act of heroism. You
were going to find out one way or another. 


Appellant asserts that the above argument "is a misstatement of law" because "the
jury is not entitled to hear about inadmissible remote priors at the guilt/innocence
stage of the trial." However, because appellant admitted to his prior convictions, the
State's argument fell within the permissible bounds of proper argument as a
summation of the evidence and reasonable deductions from the evidence. See
Rodriguez, 129 S.W.3d at 561 (stating that four general areas of permissible jury
argument are "(1) summation of the evidence, (2) reasonable deductions from the
evidence, (3) answers to argument of opposing counsel, and (4) pleas for law
enforcement"). Accordingly, we hold that appellant's trial counsel's failure to object
to the State's argument does not support a claim of ineffective assistance.

 We overrule appellant's fifth and sixth issues.

Conclusion


 We affirm the judgments of the trial court.



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1. Appellate cause number 01-05-01095-CR, trial cause number 961276; appellate cause
number 01-05-01096-CR, trial cause number 966324.
2. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 2006). 
3. See id. § 3.03(b)(2)(A) (Vernon 2003).



4. "Child" means a person younger than 17 years of age who is not the spouse of the
actor. See Tex. Pen. Code Ann. § 22.021 (Vernon 2005).


5. See Tex. R. Evid. 404, 609.
6. Although there is no discovery order in the record, the State filed a notice disclosing
other statements made by appellant that it intended to use at trial, including
appellant's statements that the complainant was "fine" and that she was "tough." As
we discuss below, the State also filed notices of its intention to introduce evidence of
extraneous offenses and prior convictions. See Tex. R. Evid. 404(b), 609.
7. Appellant was tried November 14-16, 2005. 
8. In support of his ineffective assistance claim, appellant cites Stone v. State, 17 S.W.3d
348, 349 (Tex. App.--Corpus Christi 2000, pet. ref'd). In Stone, during defendant's
trial for delivery of cocaine, his trial counsel introduced evidence that the defendant
had been convicted of murder and released from prison more than ten years earlier. 
Id. Although the court recognized the "common practice for a defense attorney to
elicit from his own client evidence regarding a prior conviction when counsel knows
or reasonably believes that if he does not bring it up first, the State will," the court
noted, based on the facts of that case, that "the State could not have introduced
evidence of Stone's prior conviction" and, furthermore, the trial court had already
indicated at a pre-trial conference that he would not allow the evidence. Id.; see also
Tex. R. Evid. 609. The court of appeals held that "no reasonably competent attorney"
would have introduced the prior murder conviction. Id. at 349, 352-53; see also
Rodgriguez, 129 S.W.3d at 559 (stating that "[i]f the remote convictions were
inadmissible" then appellant's trial counsel could not have had a "reasonable trial
strategy for failing to object to the admission of these convictions during cross-examination"). The court further held that this evidence harmed his defense in two
ways: (1) it diminished his credibility when credibility was critical-his presentation
of his alibi defense and (2) it gave substance to his threats to kill the prosecution
witnesses. Id. at 353. Stone is distinguishable based on our holding that at least two
of appellant's felony burglary convictions were admissible and appellant's two other
felony convictions may have been admissible, thus permitting appellant's counsel to
exercise his professional judgment and introduce appellant's prior convictions as part
of a trial strategy to be candid with the jury and to contrast the types of prior
convictions with the instant offense.